OF

# OPINIONS OF THE JUSTICES OF THE SUPREME COURT

TO

## THE KING, THE CABINET AND THE LEGISLATURE,

## 1887=1889.

---

### RE MILITARY ACT.

OPINION OF THE JUSTICES OF THE SUPREME COURT TO THE
CABINET.

The Act of October 1, 1886, entitled " An Act to Organize the Military
Forces of the Kingdom," is unconstitutional.

DEPARTMENT OF THE JUDICIARY,
HONOLULU, H. I., September 30, 1887.

*His Excellency Clarence W. Ashford, Attorney-General.*

SIR : The Justices of the Supreme Court have had the honor
to receive from Your Excellency a letter dated the 27th instant,
requesting, on behalf of His Majesty's Cabinet, by virtue of the
provisions of Article 70 of the Constitution, the opinion of the
Justices on the following questions, to wit :

First. " Does the Act of the Legislature, entitled ' An Act to
Organize the Military Forces of the Kingdom,' approved the
first day of October, 1886, and being Chapter XXII. of the
Session Laws of 1886, contravene the Constitution of this
Kingdom, and is said Act, or any part thereof, unconstitutional
for any reason, especially for any of the reasons hereinafter
enumerated ? "—mentioning four.

We discuss the second alleged reason first. It reads: "That Section 2 of said Act expressly purports to make the Chief of Staff, under the title of Lieutenant-General, the Commander-in-Chief of all the armed forces of the Kingdom, under the supreme command of His Majesty as Generalissimo, whereas Article 26 of the Constitution provides that 'the King is the Commander-in-Chief of the Army and Navy, and of all other military forces of the Kingdom by sea and land."

The Section of the Act reads as follows: "Section 2. There shall be a staff, the chief of which shall hold the rank and title of Lieutenant-General, appointed and commissioned by His Majesty the King, to hold office during His Majesty's pleasure. This officer shall be Commander-in-Chief of all the armed forces of the Kingdom, under the supreme command of His Majesty as Generalissimo."

We notice the incongruity of the "Chief of Staff" being the "Commander-in-Chief," positions which would seem to be incompatible. For the "Staff" is composed of subordinate officers about a superior officer, who execute his commands, and their head is the Chief of Staff. It is impossible to see how one person can be the "Commander-in-Chief" and also the "Chief" of his own "Staff." But the incompatibility of two offices, one of which is subordinate to the other, being held by the same person, is a matter of construction, and does not affect the graver question of the constitutionality of the Act. We put it in this way: His Majesty is, by Article 26 of the Constitution, the Commander-in-Chief of the Army and Navy, and of all other military forces of the Kingdom. The Act in question authorizes His Majesty to appoint a Commander-in-Chief of all the armed forces of the Kingdom, under the supreme command of His Majesty as Generalissimo. We are of opinion that a function which the Constitution has conferred upon His Majesty he cannot delegate to another, unless the warrant for this delegation of authority is provided for in the Constitution. And what His Majesty cannot do in this respect, the Legislature cannot do by enactment. There certainly cannot be two Commanders-

in-Chief of the same army at the same time. The section of the Act under consideration is, in our opinion, repugnant to Article 26 of the Constitution. Being of this opinion, the appointment by the King of a Commander-in-Chief of all the armed forces would be without warrant of law. The duties, therefore, devolved upon such an officer by the Act cannot be performed. The conclusion at which we have arrived would make it unnecessary to consider the other reasons put forth why other parts of the Act are unconstitutional; but as our opinions are asked upon them, we will give them.

The first one stated is: "That Section 1 of said Act, while making the Minister of Foreign Affairs Secretary of War and of the Navy and responsible to account for all disbursements made on account of the military or naval organization, does not nor does any other section of said Act invest either the said Minister or any other Cabinet Minister with any direct control over such expenditures." In Section 1, the duties of the Minister of Foreign Affairs as Secretary of War and of the Navy are "to account for all moneys disbursed by the Military and Naval Department and to accept and approve all drafts upon the treasury therefor." This means that he is to keep the accounts of the Department of War and of the Navy and that his approval of drafts upon the Treasury is essential, or they cannot be paid. We notice that this section does not confer upon the Minister the authority to draw or sign the drafts upon the Treasury. And it would seem by the latter part of Section 8 of the Act that this authority was conferred upon the " Chief of Staff." This reads, " All drafts upon the military, volunteer and naval appropriations shall be made through the Chief of Staff," etc. If it read " by " and not " through," the difficulty would be cleared up. But the Section goes on to say that the Chief of Staff (who it must be remembered is the Commander in-Chief), " shall submit the same to the Secretary of War and of the Navy for approval." The power to approve implies the power to disapprove. But the section says further, " provided that no liability or expenditure shall be incurred without the

approval in writing of the Commander-in-Chief," etc. This confers the authority to incur expenditure solely on the Commander-in-Chief, and it is nowhere expressly given to the Secretary. The Commander-in-Chief is further required to "cause proper vouchers for the same (the expenditure) to accompany each requisition for a draft upon the Public Treasury, which voucher shall be retained by the Secretary." This would imply that the Commander-in-Chief is to send a requisition for a draft to the Secretary who is to make the draft on the Treasury. But it is inconsistent with the previous part of this section and with Section 1, which, as we have seen, confer the power on the Secretary merely of approving the drafts, and not of drawing them.

It is difficult to make sense out of this law. It is absurd to require the "acceptance and approval" by the Secretary of a draft which he is himself to draw, and it is equally absurd to make the written approval of the Commander-in-Chief the only authority for the expenditure of money or incurring of liability, and at the same time to require the approval of the Secretary upon drafts for their payment. If the Commander-in-Chief has authorized the incurring of any liability, the law is satisfied and the Secretary must "approve."

In our opinion, the Act does not invest the Secretary of War and of the Navy or any other Cabinet Minister with any control of the disbursements for account of the military or naval organization. But a law which places the responsibility for the disbursement of public moneys beyond the control of any responsible Minister of the Crown, is not by that fact unconstitutional. It may be unwise to do so and the Legislature may not have intended it in this case. Still it is not unprecedented. By the terms of Section 49 of the Act regulating the Bureau of Public Instruction (Compiled Laws, p. 213) the Board of Education is "invested with full power to apportion and disburse the various monies and avails devoted to the promotion of public education."

By Section 9 of the Auditor-General's Act (page 671 Compiled Laws) "every account shall be considered duly authorized that

is in accordance with any existing law or regulation, or has been directly sanctioned by one or other of the responsible Ministers of the Crown, and covered by any Appropriation Act in force at the time of payment."

The latter part of Section 4 of the Act under consideration reads that "appropriations for defraying the costs of the King's Guard, volunteer or other military or naval organization, under and by virtue of any law or enactment in force in this Kingdom, shall be expended and accounted for as provided for by this Act." If the Act be considered as unconstitutional and inoperative in respect to the disbursement of the military and naval appropriations, by reason of there being no legal Commander-in-Chief to incur liability and disburse the funds, there will be no difficulty in resorting then to the Appropriation Bill. The items for military are included in this Act in the Department of the Minister of Foreign Affairs, who can draw upon these appropriations on his ministerial responsibility.

The third reason alleged is thus stated : "That Section 4 of said Act in the second paragraph thereof purports to appropriate for the purposes of 'carrying this Act into effect the sum of twenty-one thousand dollars for each biennial period, thus purporting in effect to bind succeeding Legislatures to the support of the purposes set forth in the Act."

The paragraph referred to reads : "There shall be appropriated and applied to such purpose from moneys in the Public Treasury, not otherwise appropriated, the sum of twenty-one thousand dollars for each biennial period."

We take it that the words "not otherwise appropriated" mean not appropriated by the general Appropriation Bill which is authorized by the 75th Article of the Constitution. "The Legislature votes the appropriations biennially," etc. And there is force in the view that moneys appropriated by a law, the item for which is not in the Appropriation Bill, cannot be drawn except from a surplus in the Treasury after all the items in the Appropriation Bill have been met. In this country this condition of the Treasury could not be ascertained until the close

of the biennial period. But the fourth section of the Appropriation Bill for 1886-8 reads, "The Minister of Finance shall not cause or allow to be paid from the Treasury any money for objects not authorized by this law," except under the provisions of the Postal Savings Bank Act. And it could well be argued that this general enactment controlled.

We are of opinion that one Legislature cannot bind its successor to the voting of appropriations where no legal rights of third parties are involved. But the item for the military and naval organization appearing in the Appropriation Bill as well as in the Act under consideration, further discussion of it is unnecessary.

The fourth reason as suggested in your letter is:

Fourth. "That Section 5 of the said Act provides for the making and promulgation by a body or authority other than the Legislature of this Kingdom of a code of rules and regulations to be entitled the 'Regulations of the Army and Navy,' which rules and regulations are by said Act (Section 7) invested in advance with the force and effect of law, and violations of the same are made penal."

Says Cooley on Constitutional Limitations, p. 116: "One of the settled maxims on constitutional law is, that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority."

But there are some matters of mere regulation the authority to make which can be delegated by the Legislature without an infringement of the Constitution.

An instance of this is that given by Section 688 of the Civil Code, to the Minister of Finance to make regulations for collection of duties and the transaction of the business of the custom houses, etc., and the power given by Section 833 of the Civil Code to the Supreme Court to make rules for regulating the practice in the Courts. Until we should be shown the "Rules and Regulations" promulgated by the Chief of Staff under the authority of Section 5 of the Act, it would be impossible to say whether they amounted to an attempt to

49

exercise powers of legislation, or infringed upon the functions of the Legislature. If, however, these "Rules and Regulations" imposed penalties, they would be inoperative and void as repugnant to the Constitution.

The second question asked is, "What laws or parts of laws, if any, are repealed by Section 12 of this Act."

If the Legislature should intend to repeal any specific law it would be better to indicate it, for it cannot be known what laws are repealed by implication or by general words, as used in Section 12 of this Act, until there has been a judicial decision to that effect.

From such investigation as we are able to give to the matter, we find only one law which would be repealed by the Act under discussion. It is the Act of the 1st of August, 1874, being Chapter XXXIX. of the Session Laws of 1874. This Act abolished the office of Secretary of War and of the Navy and authorized His Majesty to confer the duties of this office by special commission on a Commander-in-Chief. This appointment was never made, as we have been informed, owing to the belief that the law authorizing the appointment of a Commander-in-Chief was repugnant to the 26th Article of the Constitution then in force.

Respectfully submitted,

A. F. JUDD,<br>
LAWRENCE MCCULLY,<br>
EDWARD PRESTON,<br>
RICH. F. BICKERTON.